IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| JOANN THORNTON, | : | |
| | : | |
| Claimant, | : | |
| | : | |
| v. | : | CASE NO. 3:12-CV-101-CDL-MSH |
| | : | Social Security Appeal |
| CAROLYN COLVIN, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

_____

**<u>REPORT AND RECOMMENDATION</u>**

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Claimant's application for disability insurance benefits and supplemental security income, finding that she was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

**LEGAL STANDARDS**

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). "Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this

court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F. 3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted).  The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1]  *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).  It must, however, decide if the Commissioner applied the proper standards in reaching a decision.  *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam).  The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it.  *Id.*

The claimant bears the initial burden of proving that she is unable to perform her previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic.  *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).[2]  A claimant seeking Social Security disability benefits must demonstrate that he/she suffers from an

---

[1]  Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991).  It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

[2]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decision of the former Fifth Circuit rendered prior to October 1, 1981.

impairment that prevents him/her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1 *et seq*.

    Under the Regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4). First, the Commissioner determines whether the claimant is working. *Id.* If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. *Id.* Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. *Id.* Third, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations (the AListing@). *Id.* Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. *Id.* Fifth and finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Id.* The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## Administrative Proceedings

Joann Thornton ("Claimant") applied for an award of both disability insurance benefits (ADIB@) and Supplemental Security Income benefits ("SSI") on June 11, 2007 and alleged an onset date of disability of September 1, 2005, due to fibromyalgia, arthritis, hypertension, and bipolar disorder. (Tr. 160; ECF No. 11.) Her claim for benefits was heard by an administrative law judge ("ALJ") and denied on June 7, 2010 when she was 44 years of age. (Tr. 18-29). After Claimant submitted a timely request for review by the Appeals Council ("AC"), she was denied there as well on June 7, 2012. (Tr. 1-6). This action for judicial review of the Commissioner's decision is likewise timely and ripe.

## Statement of Facts and Evidence

In his decision denying benefits to Claimant, the ALJ determined that Claimant had severe impairments of arthralgia/fibromyalgia, major depressive disorder, hypertension, borderline intellectual functioning and polysubstance abuse in full and sustained remission. The ALJ found that Claimant's condition did not meet or medically equal the criteria of listings 12.02 and 12.04. The ALJ next found that the Claimant has the residual functional capacity ("RFC") to perform medium work with restrictions prohibiting frequent or repetitive stooping, crouching, crawling or climbing and restrictions to simple non-detailed tasks without public interaction or cooperation with coworkers. The RFC assessment barred Claimant from resuming her past relevant work

and testimony was therefore elicited from a VE. The qualifications of the VE were stipulated to by Claimant's attorney at the hearing and the VE testified that there are jobs existing in the national economy which Claimant could perform within her restricted RFC. Therefore, after the complete five-step sequential analysis was undertaken, the ALJ held that Claimant was not disabled within the meaning of the Social Security Act and benefits were denied.

## DISCUSSION

Claimant does not contest in her brief before the Court that the ALJ erred in his assessment of her physical impairments. She does, however, argue that the ALJ erred in the manner in which he addressed her non-exertional impairments. (Cl.'s Br. 7, ECF No. 13.) Specifically, Claimant contends first that the ALJ erred in not awarding her benefits because she can neither cooperate with coworkers due to irritability nor control her anger and is therefore disabled. Next she contends that the ALJ posed an incomplete hypothetical question to the VE. Third, she argues that both the ALJ and the AC incorrectly evaluated or ignored what she contends are disabling Global Assessments of Functioning ("GAF"). (*Id.* at 8.) Lastly, she assigns error to the AC's decision to reject the psychological evaluation of Dr. Harvey Gayer, leaving the Gayer evidence to be considered in deciding the subsequent application which she filed August 25, 2010 to a later date. (*Id.* at 11.)

The Commissioner has responded and argues Claimant failed to prove that the ALJ's decision is not supported by substantial evidence considering the record as a whole

and that the evidence submitted by Claimant to the AC would not change the substantial evidence she contends supports the record as a whole nor would the evidence returned to Claimant by the AC warrant a remand under Sentence Six.  Thus, the issues are joined and are addressed in the order in which Claimant raised them in her brief.

I.  **Did the ALJ err in determining that Claimant can work even with her irritability impairment?**

Claimant first contends that she is disabled as a matter of law by her inability to cooperate with coworkers. (Cl.'s Br. 7; ECF No. 13.)  Specifically, Claimant argues that because the ALJ "found that [Claimant] lacks an ability the Commissioner says is required for all competitive work, the ALJ's decision should be reversed. (Cl.'s Br. 8.)

In determining the Claimant's residual functional capacity ("RFC") the ALJ carefully considered and discussed Claimant's history of depression and bipolar disorder and expressly noted that this affects her ability to get along with others and is the primary reason she cannot return to her past relevant work.   (Tr. 24.)  The record shows that her condition is not static, however.  The ALJ found that there was an exacerbation of her mental impairments as the result of the ending of a long term relationship in 2009.  (*Id.*)  An evaluation was done by John Hubbard, M.D. on January 11, 2010, wherein he opined that she was suffering nervous symptoms which he attributed to her bipolar disorder and narcissistic personality disorder and that Claimant was unable to follow even simple instructions. (Tr. 614.)  Though Dr. Hubbard found her to be alert, well oriented with an intact memory and coherent thoughts and average intellectual capacity he nonetheless

assigned her a Global Assessment of Functioning ("GAF") of 41, finding her to be agitated and angry and stating that Claimant "*in this state* could not be expected to work." (*Id.*) (emphasis added).  Dr. Hubbard added, however, that his comments were based *only on the first interview* and were made without the benefit of complete medical records.  Claimant had, according to her testimony at the hearing on January 7, 2010, previously discontinued her prescribed medications Prozac and Zoloft on her own initiative, feeling as though she were "fine." (Tr. 45-47).

After approximately three months of self-reported compliance with prescribed medications and weekly monitoring by a mental health facility, Claimant presented to Justin Huthwaite, a psychologist, for a consultative examination arranged at the request of her counsel made at the hearing before the ALJ. (Tr. 622-24.)  Dr. Huthwaite completed a mental residual functional capacity assessment that found Claimant to be "moderately" impaired in social functioning but able to carry out simple tasks. (*Id.*)  The record in this case reveals that in his hypothetical to the VE, the ALJ limited Claimant to "tasks without public interaction or cooperation with coworkers." (Tr. 67-72.)  The ALJ discussed this in relation to the entire longitudinal history of her care in determining that the record fails to establish that her condition remained in its exacerbated state for twelve continuous months, precluding work at the performance level of unskilled jobs as identified by the VE. (Tr. 24.)  The ALJ expressly noted that Dr. Huthwaite's RFC was the same as prior State agency evaluations and was assumed by the VE in his response to the ALJ's hypothetical. (*Id.*)

A review of the hearing transcript shows that the ALJ was careful to frame his hypothetical question to the VE with the assumptions of simple non-detailed tasks that do not require dealing with the public or cooperative efforts with coworkers. (Tr. 66-69.) The transcript indicates that the question to the VE was, in fact, rephrased to make clear that the limitations imposed on Claimant in the mental RFC were included as assumptions in the question to the VE. (Tr. 65-69). The response given to the completed question after clarification proves that Claimant is not disabled as a matter of law from engaging in work. As required in the five step sequential analysis, the Commissioner carried her burden at Step Five. The VE identified jobs available which Claimant can perform and that are available in the national economy. Despite being given the opportunity to do so by the ALJ, Claimant's counsel asked no questions of the VE regarding the conclusion testified to that jobs were available which Claimant could perform consistent with the RFC and limitations included therein. (Tr. 68, 69.) No evidence was offered to rebut the VE's testimony as to available jobs. As such, Claimant's argument is without merit.

**II.     Did the ALJ err in asking an incomplete hypothetical question of the Vocational Expert?**

In her second enumeration of error, the Claimant argues that the ALJ erred in asking an incomplete hypothetical question to the Vocational Expert. (Cl.'s Br. 12, ECF No. 10.) Specifically, Claimant contends that the ALJ failed to ask a hypothetical question to the VE which contained any reference to her mental limitations. (*Id.*)

It is the law of this circuit that hypothetical questions posed to a vocational expert must contain adequate assumptions or the answers given cannot constitute substantial evidence of ability to engage in substantial gainful activity. *Stubbs v. Mathews*, 544 F.2d 1251, 1256-57 (5th Cir. 1977); s*ee also Freeman v. Schweiker*, 681 F.2d 727, 730 (11th Cir. 1982). In order for a vocational expert's testimony in response to this question to constitute substantial evidence on which the ALJ may rely, the question must comprise all of the claimant's impairments. *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1220 (11th Cir. 2001). The ALJ is not required to include in the question claims of impairment that he has found unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

The second issue raised by Claimant expands the argument she made in her first asserted error. Having first argued that the RFC formulated by the ALJ to include no interaction with the public or coworkers rendered her disabled as a matter of law, Claimant next argues that the hypothetical asked of the VE was incomplete to the extent it did not include her limitations as to social functioning and concentration, persistence and pace. (Cl.'s Br. 12.)  It is important to avoid conflating these two issues, however, since the hypothetical question occurs at Step Five and the ALJ's determination of the Claimant's RFC with limitations is done earlier. Claimant bases her argument as to this issue on *Winschel v. Comm'r of Soc. Sec.,* where the Eleventh Circuit Court of Appeals held that a hypothetical question which limits a claimant to simple work without otherwise accounting for limitations in concentration, persistence and pace is inadequate.

9

*Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176 (11th Cir. 2011).  Claimant focuses her argument in her reply brief contending that "our ALJ did not direct our VE to consider anything beyond the hypothetical question itself." (Cl.'s. Reply Br. 4; ECF No. 16.)  The record reveals, however, that in clarifying his hypothetical question to the VE, the ALJ took care to make certain that the VE understood that the hypothetical included the mental limitations included in the RFC.  (Tr. 67-69).

In determining Claimant's RFC, the ALJ discussed in detail the examinations of Dr. Hubbard and Dr. Huthwaite, noting the complete mental residual functional capacity assessment done by Huthwaite found that Claimant had no impairment in carrying out simple tasks. (Tr. 24, 25).  The ALJ further considered Huthwaite's findings in relation to earlier state agency evaluations found at Exhibits 8F and 15F in the record and determined the three opinions to be consistent.  (*Id.*)  Given limitations on interaction with the public and coworkers which the ALJ clearly included in the hypothetical question to the VE, the Claimant was found to have the RFC to perform simple, non-detailed work.  (*Id.*)  Claimant's limitations as to concentration, persistence and pace were thoroughly considered by the ALJ and Paragraph B and Paragraph C findings were made by the ALJ as well in his RFC determination.  In *Smith v. Comm'r of Soc. Sec,* the Eleventh Circuit held that *Winschel* is not instructive of whether the ALJ properly considered limitations as to concentration, persistence and pace.  *Smith v. Comm'r of Soc. Sec.,* 486 F. App'x 874, **4 (11th Cir. 2012).

A review of the record here, as in *Smith,* shows the ALJ thoroughly considered the mental limitations as to concentration, persistence and pace in the formulation of the RFC and its restrictions on public and coworker interaction. In *Smith,* the ALJ found the asserted difficulties to be not credible. *Smith,* 486 F. App'x at 876. The ALJ here found that the limitations were episodic, tied to Claimant's decision to simply quit medicating and the stress of a failed relationship, and that there was insufficient evidence to prove that the exacerbated state lasted twelve months or longer. (Tr. 24-26.) At the hearing, the Claimant even testified that she enjoyed watching television programs during the day and strongly denied any difficulties concentrating on the storylines. (Tr. 65.) Thus, it appears that the primary problems with which Claimant struggles are her anger and irritability caused by depression. Like the claimant in another Eleventh Circuit decision, *Scott v. Comm'r of Soc. Sec.,* the anger and irritability, while an integral part of the severe impairment of depressive disorder, do not preclude simple work provided there are limitations on social interactions such as with the public or coworkers. *Scott v. Comm'r of Soc. Sec.,* 495 F. App'x 27 (11th Cir. 2012). In that case, the ALJ carefully considered and discussed what the experts stated in formulating the RFC. *Scott,* 495 F. App'x at **2.

In this case, the mental limitations associated with the severe impairments of major depressive disorder, borderline intellectual functioning and polysubstance abuse found by the ALJ at Step Three were adequately accounted for in the ALJ's RFC determination and additional limitations were imposed in the hypothetical question to the

VE to account for Claimant's difficulties in cooperating with coworkers and dealing with the public. (Tr. 25.) These limitations also adequately accounted for the opinion by Dr. Huthwaite that Claimant would need only intermittent supervision. The VE testified in response that there were jobs available which Claimant could perform with the RFC and limitations included therein. No questions were posed by Claimant's counsel to rebut or undermine the VE's conclusion. Thus, it is found that the Commissioner carried her burden at Step Five and the Claimant's second asserted lacks merit.

### III. Did both the ALJ and the AC incorrectly evaluate or ignore what Claimant contends are disabling Global Assessments of Functioning?

Claimant's next asserted error is that the ALJ's evaluation of her GAF scores was incorrect and incomplete. (Cl.'s Br. 11.) The Commissioner points out in response that the ALJ cited Claimant's extensive and varied activities of daily living in formulating the RFC to include caring for her twelve year old son and helping him with homework, driving, going out daily to shop, meal preparation, and reading and watching television -- activities of daily living characterized by Claimant's treating physician as good. (Comm'r's Br. 11.). When the GAFs were considered by the ALJ in light of Claimant's full and sustained activities of daily living, no functional, work-related restrictions were established by the GAFs other than those properly accounted by the ALJ in the RFC formulation. The ALJ noted the GAF of 41 found by Dr. Hubbard and correctly noted the lack of any correlation between GAF scores and disability. (Tr. 4, fn. 1.) Claimant's credibility as to her symptoms and mental limitations were properly questioned and discounted by the ALJ in noting her assertion that she had suffered from pain "since

birth" in response to inquiries by treatment providers, as well as her insistence that she lacked the ability to count money despite her work history as a cashier. The ALJ is not required to discuss every piece of evidence in the record. *Dyer v. Barnhart,* 395 F. 3d 1206, 1210 (11th Cir. 2005). The GAFs as determined by the ALJ do not necessarily reflect the ability of an individual to work. (Tr. 24). The ALJ discussed each care provider's findings and opinions sufficiently and in a manner that allows the courts to exercise meaningful judicial review of the ALJ's findings and conclusions. As such, there is no merit in Claimant's third asserted error.

## IV.    Did the Appeals Council err in denying review of the ALJ's decision?

The Claimant raises as her final assertion of error the decision of the Appeals Council to deny review medical records that were submitted after the ALJ's decision was filed. (Cl.'s Br. 15.) Specifically, she contends error occurred when the AC added only one of four new exhibits to the record, leaving out the exhibit prepared by Dr. Harvey Gayer as not material to the time adjudicated by the ALJ. (*Id.*) The record reveals that the AC returned the evidence of Dr. Gayer's psychological evaluation pointing out that Claimant had already filed a new, second application for benefits and that the evidence of Dr. Gayer's findings and conclusions will be considered in the new, pending application. (Tr. 2.) The Commissioner correctly responds that the record as to the Claimant's first application is closed and that the AC acted properly in returning the evidence and advising Claimant that it will be considered in her new application. (Comm'r's Br. 16.)

The Appeals Council will review an ALJ's decision only when it determines, after review of the entire record, including the new and material evidence that the decision is contrary to the weight of the evidence currently in the record. 20 C.F.R. § 404.970(b). New evidence presented to the Appeals Council must relate to the period on or before the ALJ's hearing decision. *Id*. When the Appeals Council has denied review of new evidence properly presented, a reviewing court must consider whether the denial of benefits is supported by substantial evidence in the record as a whole, including the evidence submitted to the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262, 1266-67 (11th Cir. 2007). A remand to the Commissioner is proper under sentence six when new material evidence that was not incorporated into the administrative record for good cause comes to the attention of the district court. *Id.*

In a Sentence six remand, the threshold issue is whether the evidence is both new and noncumulative. 42 U.S.C. § 405(g). In this case, Dr. Gayer's report is new in the sense that it was not in existence when the ALJ reached his decision. However, it is also largely cumulative of evidence already in the record. The IQ testing done by Dr. Gayer confirms Claimant's borderline intellectual functioning which was found to be a severe impairment by the ALJ. (Tr. 24.) Dr. Gayer's diagnosis of major depressive disorder and borderline intellectual functioning are exactly the same as found by the ALJ in determining Claimant's severe impairments. Dr. Gayer noted alcohol dependence with three arrests for driving under the influence of alcohol but also noted full remission. (ECF No. 13-1.) The ALJ found as a severe impairment polysubstance abuse in

14

sustained remission, taking into account that the Claimant in fact continues to drink alcohol twice weekly and uses marijuana. (Tr. 24-25.) The evidence is cumulative to the extent that a Sentence Six remand would not be proper here. Thus, Claimant's final assertion of error is lacking in merit.

## CONCLUSION

WHEREFORE, for the foregoing reasons, it is RECOMMENDED that the Commissioner's decision in this case be AFFIRMED. Pursuant to 28 U.S.C. § 636(b)(1), the Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

SO RECOMMENDED, this, the 23rd day of August, 2013.

                                                S/ STEPHEN HYLES
                                                UNTED STATES MAGISTRATE JUDGE